And the dispute continues. Ratajczak v. Beazley Solutions. Welcome back, Mr. Fredericks. Thank you, Your Honor. May it please the Court, insurers carry the burden of clear communication on coverage. Insurers also have the duty to timely and forthrightly act on forfeiture defenses or they risk losing them through a stop-up. In this case, Beazley should be stopped from disclaiming coverage on consent-to-settle grounds because it failed in both regards. Beazley failed to communicate clearly in response to the Ratajczak's coverage position. Beazley failed to act timely and forthrightly in stating its consent-to-settle forfeiture defense. We believe the briefs clearly establish that the threatened claims triggered fundamental warranty coverage. And Beazley has conceded that prejudice is not at issue in this appeal. So we'd like to focus our argument on whether coverage was forfeited by the binding of settlement without consent. I think it's important to note, to the extent the Court would like, a quick rundown on insurance policies. This is a communication issue, but it only involves the forfeiture provisions. Policies have two types of provisions in them. One are coverage provisions, your insuring agreement, your exclusions and some definitions. They also have forfeiture provisions, which are conditions an insured must meet to get the coverage that they already paid for. Insurers can, of course, waive and be stopped from enforcing their forfeiture, but we're not here to discuss whether Beazley has waived or forfeited its coverage provisions. And oftentimes when we talk about insurance policies, I feel that they get lost in the mix of what's being forfeited here. So Beazley, and our first point is Beazley failed to communicate clearly on coverage. The retire checks clearly communicated their plan to bind settlement. They clearly communicated their coverage position on mitigation, that they felt that they had to bind settlement under the mitigation forfeiture provision at risk of triggering that. It was somewhat of a box the retire checks were in. Do they mitigate and not get consent to settle or get consent to settle and not mitigate? Admittedly, there were a few days that Beazley had to decide this issue. But they weren't deciding coverage. They were deciding whether what the retire checks told them should or shouldn't forfeit coverage. And they had a duty to forthrightly and quickly, as the case may be, give their position on that. And that's why we're here today, because they didn't. They sat on their hands and watched to see what the retire checks would do. And they did exactly what they told them. They bound settlement and they mitigated damages. They even gave Beazley a reason why they thought they had to mitigate. The lenders that were involved as part of the buyer group that was suing them, they wanted to close out their loans by the end of the year. Beazley failed to act timely and forthrightly to state any type of position on the coverage defense. They did ask for more information. But asking for more information on this section in the policy that you saw in the briefs, it has many interlapping duties and responsibilities, both for the retire checks as well as to Beazley. And Beazley could have easily told the retire checks, if you bind that settlement, we're not going to cover you, or stop. Don't do it. We need more time. You risk losing everything under this policy if you do it. But Beazley had an incentive not to communicate forthrightly, because the insured was about to commit a policy violation that would benefit Beazley. And Beazley's own actions after settlement show how easy this would have been for Beazley to do. Within an hour after being told that settlement was bound, Beazley responded saying, oh, you violated the policy, proceed as an uninsured. That should have been done days before. And given the retire checks, the ability to weigh Beazley's position. Beazley's still in the position to argue coverage. If this goes back on remand, we will argue allocation issues and coverage issues. Those are still in Beazley's wheelhouse to litigate. But on this forfeiture issue, and whether or whether or not the retire checks forfeit all coverage they paid for, $160-something thousand in warranty and reps coverage, over this communication issue, as the insurer who has the burden to ensure clear communications, our position is that Beazley should be the one that forfeits its coverage defense, not the retire checks.  Thank you, Your Honor. Looks like it. Thank you. Good morning, Your Honor. Ms. Arterizzi. Good morning, Your Honor. Michelle Arterizzi for Applebee's Beazley Solutions. The argument that counsel just presented that on Christmas Eve when they sent their notice, the plaintiffs presented Beazley with a clear coverage position, is an argument they made for the first time in their reply brief. They had an estoppel argument in their opening brief, but it's not until you get to the reply brief that we suddenly have their presenting a clear coverage position. So I think they waived that. But apart from waiver, it doesn't make any sense. Because if you look at the letter, which, of course, was sent Christmas Eve at 7 o'clock London time, so it's after business hours, the letter just says, here's notice of the lawsuit, or the threatened lawsuit. And it says, the lenders want to settle, and we intend to settle. Now, at this point, we know that they've already worked out all the economic terms of the settlement, but they don't tell Beazley what the terms are. They don't tell Beazley that they're planning on settling by December 28th, which we also know from the internal discussions, the discussions with the other side, that that's their plan. And they don't ask for any consent. They do mention the mitigation provisions of the policy, so clearly the lawyers have read the policy. Two days later, after the first business day afterwards, Mr. Clark, on behalf of Beazley, responds, and he says, we're reserving all of our rights under the policy. He calls their attention to Section 10D, which is the section that has the consent to settlement provision. And he says, please give me more information about the settlement. Now, they haven't clearly told him that they're going to argue that mitigation provision trumps the consent provision and excuses them from having to seek consent. We know that was their plan now because of their subsequent letter and because that was what they argued in the district court, unsuccessfully. The district court said, no, the mitigation provisions of the contract, of the policy, don't trump the provisions relating to consent to settle because you created your own emergency here by not giving notice in a timely manner. And you can't then not ask for consent. So the letter that Mr. Clark sends back in which he acknowledges and reserves the rights, Beazley's rights, asks for more information, which is exactly what you do if you're assuming that perhaps they're going to follow the policy and ask you for consent to the settlement. So he asks them for everything. They send him that day after business hours, which is Thursday, December 27th. They send him reams of documents. They continue to send them on the 28th. And in the afternoon of the 28th, they say, we have to bind the settlement today. We're going to send nearly $10 million to the other side. And again, they don't ask for permission. They know it's there. It's not that they needed us to tell them it's there. They've admitted it's an undisputed fact that their lawyers are experts on insurance issues. So they know it's there. They're hoping to be able to get around it. The court says you can't get around it. They don't appeal that decision. And now they say that we waived it, that we tacitly agreed to them not having to abide by their obligations under the policy. That just doesn't make any sense. And we're in agreement of what the legal test is. The legal test is that for Estoppel is that they had to show, plaintiffs had to show, by clear and convincing evidence, both that Beasley had a duty to speak and that they reasonably relied on Beasley's silence to decide that they could go ahead without seeking our consent. Well, there's nothing in Mr. Clark's letters that indicates that he had a duty to speak. He didn't have a duty to explain the policy to these sophisticated people. And they certainly, the lawyers, could not have reasonably relied on his saying, I reserve all of my rights as being a waiver of Beasley's right to require them to seek consent. So it's also important to note that Mr. Fredersen says, yes, prejudice is not an issue. The district court said that under both New York and Wisconsin law, which is the two laws that could apply here, that it doesn't matter whether Beasley was prejudiced. They don't dispute that. We don't dispute that. So once the Estoppel goes away, that's it. They don't have any defense on the consent issue. I'd also like to raise the other issue, which Mr. Fredersen didn't talk about, which is there's an alternative basis for affirmance here, which is that there was no coverage for the settlement in any event. In order to have coverage for the settlement, you had to be settling a claim for breach of a fundamental warranty under the purchase agreement. Claims for breach of the general warranties were subject to a $1.5 million cap, and the policy had a $1.5 million retention. So if the claim here is only for breach of these general warranties, then there's no contractual obligation on their part to pay anything more than $1.5 million. So there's no coverage. And what they were paying for was the fraud claims, and those aren't covered under the policy. And the district court looked at the complaint, and the court said, you can see what it is the buyers were claiming here. They cited six different general warranties, and of course the buyers here had every economic incentive to want to find a breach of a fundamental warranty because they had no cap. But yet, they only claimed breaches of the general warranties. Now plaintiffs say that what they were really complaining about here was poor record keeping and that the books weren't kept properly. But that's not right, as the district court recognized. A fair reading of the complaint is that the claim is there was a manufacturing problem. It was putting the urea into this product that was supposed to have only pure whey. That was the problem. And you can see even from the letter that the buyer sent to its investors, which plaintiffs decided in their reply brief, they say it was a manufacturing problem. That's what we found, not that the books were right. In fact, the books were right. The profits were right. The problem was that what was undisclosed is how you got those profits, and that was by putting in a much cheaper ingredient than you could use, you could properly use. And that's why they went to the general warranties, which were things like we're in compliance with our contracts, which you can see they were not. Land O'Lakes. We don't have any claims by supplier, by our customers against us, which you can see they did not. We've told you everything that you need to know that's material. They didn't comply with that, and those were subject to the cap. And I'd just like to mention that they raise negligent misrepresentation in their reply brief. Again, that's raised for the first time. It should be waived. But if it's not, negligent misrepresentation claims are not covered under this policy because the policy ensures only what they are contractually obligated to pay, and the policy is quite clear that it's just ensuring their contractual obligations. So if the court has no questions, I'd ask you to affirm the judgment. Thank you. Thank you, counsel. Anything further, Mr. Fredrickson? Yes, Your Honor. On the two arguments of waiver. In the first part of our brief, argument three, we argued that Beasley should stop from using policy forfeiture provisions. Within there were clear communication cases. We restated the argument slightly. Admittedly, in our reply brief, the legal propositions are the same, and we don't believe that they're waived. On the issue of negligent misrepresentations, Beasley argued that in the footnote that the policy didn't cover it. We replied to their argument. So I don't also agree that that issue is waived. I think the policy covers representations. If representations that are negligently made aren't covered, what is the $160,000 being paid for? The coverage was for warranties and reps made by the buyers. If those representations were made intentionally, it wouldn't be covered, obviously. But if they're negligently, that's what this policy was there for. I think I heard Beasley suggest to this court that jurisprudence on notice for these types of claims should require some type of magic words from the insurers. They didn't use that term, but what's really being argued by Beasley is that if insurers don't say the right thing when they communicate with the insurer, they risk forfeiting their coverage. They don't have any citations for that proposition, and I don't think it would be a good extension of the law on policies like this. As far as the books of records of count, in our moving brief, we argued that those are financial records. The financial records of the company were not correctly stated, allegedly. That should fall into the wheelhouse of fundamental warranty coverage. Does the court have any questions? It doesn't look like it. Thank you. Thank you very much. The case is taken under advisement.